No. 14,480.

STATE OF LOUISIANA vs. WILLIE WILLIAMS.

SYLLABUS.

On trial of a party charged with murder, the unsworn statements of the party alleged to have been killed, are admissible in evidence, only in exceptional cases. Before they are introduced the district attorney should establish the state of facts, making them admissible. Where they are sought to be introduced as part of the *res gestae,* the facts going to make them such should be established by testimony of parties cognizant of them. The admissibility of the statements themselves being the very issue for decision, no part of them can be used as furnishing the basis and foundation on which they are to be admitted.

A PPEAL from the Twenty-first Judicial District, Parish of Pointe-Coupeé—*Claiborne, J.*

---

The defendant, sentenced to be hanged under a conviction for murder, appealed.

He rests his right to reversal upon the following bill of exceptions:

"Be it known that on the trial of the above styled and numbered cause the *corpus delicti* not having been proven or admitted and no evidence having been introduced to prove the homicide of Alfred Hebert, alleged in the indictment to have been committed by the defendant, Willie Williams, the State put upon the stand one T. W. Noble, who testified as follows":

"Witness was well acquainted with the deceased, Alfred Hebert, and resided in the same house with him. Witness knew of his own knowl-

edge that on the night of the alleged homicide, said Alfred Hebert was standing on guard at Fordoche station, in the Parish of Pointe Coupeé, near the railroad track, for the purpose of preventing some one in the village of Fordoche from escaping or passing beyond the limits of the village of Fordoche. Witness, prior to the affray in which said Alfred Hebert had been mortally wounded, had last seen said Alfred Hebert at 10 o'clock the night of the alleged homicide. At the time when the alleged homicide was committed witness was in bed in his house, which was situated very near the station, and had heard a train arrive at and leave the station at some time between the hours of two and four A. M. on the night of the alleged homicide, and a few minutes after the arrival of the said train the deceased, Alfred Hebert, entered the room in which witness was sleeping, badly shot through the head."

"The State then offered to prove by the witness that the deceased, Alfred Hebert, on entering the room of witness as aforesaid, told witness that while he was standing on guard at said railroad station, a few minutes previously, a train arrived at the station and a convict jumped off the train and walked up to said Alfred Hebert and asked him if he was a railroad man; that said Alfred Hebert replied that he was not, whereupon said convict jumped upon said Alfred Hebert and took his pistol away from him and shot him with it through the head, and inflicted the wound with which said Alfred Hebert was suffering at the time of said conversation with witness."

"The defendant objected to this testimony of witness as to said declaration of said Alfred Hebert made to witness out of the presence of the accused, on the ground that the same was hearsay and that no foundation had been laid for the introduction of the same as a dying declaration."

"The court overruled the objection and allowed the testimony to be introduced, on the ground that it was a part of the *res gestae,* to which ruling of the court defendant excepted, and reserved this his bill of exceptions and tendered the same for the signature of the court."

*By the court:*

"The objection on the part of the accused to the testimony of T. W. Noble was overruled on the following grounds: Noble had already testified without objection that Hebert, the deceased, who resided with him and who had left him shortly after ten o'clock at night to stand guard near the depot, had come in some time between two and four o'clock of the same night, badly wounded in the head."

"The witness was then asked to tell what Hebert said and this was the question objected to on the ground that statements of deceased made out of the presence of accused were not admissible as stated above. When this objection was made the jury was retired and the matter argued out of the presence of the jury, and the following facts elicited, to-wit: That just as Hebert came in wounded and waked witness, he, witness, distinctly heard the noise or rumbling of a train just pulled out from the station and going east; that Hebert said the man who shot him had jumped on the freight train which was just pulling out; that he, Hebert, had been standing on the narrow space between the main track and the switch when the freight train pulled in; that as the train slowed up a convict jumped out from between two of the cars and confronted him, Hebert; that the convict asked him if he was a railroad man, and when answered in the negative, then jumped on him, Hebert; that he, Hebert, drew his pistol, but was unable to use it on account of the superior strength of the convict; that after a desperate struggle the convict took the pistol from him and shot him, Hebert, in the head and then jumped on the freight train which was just pulling out."

"The court being of the opinion that this evidence established circumstances and declarations closely connected with the fact then under investigation, decided to admit the said testimony as part of the *res gestae*. The jury was called in and after the witness Noble had testified to the fact that he heard the rumbling of the departing train as the wounded man was speaking to him, the question was again asked him as to what Hebert said, and objection again made as aforesaid and on the same grounds as aforesaid, the court overruled the objection and permitted the evidence to go to the jury."

"To this ruling of the court the accused, by counsel, excepted and tendered the above bill."

---

*Walter Guion,* Attorney General, and *Albin Provosty,* District Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

---

*John Yoist* and *William C. Carruth,* for Defendant, Appellant.

---

The opinion of the court was delivered by

NICHOLLS, C. J. The State having offered in evidence the unsworn statements and declarations of Hebert, the party alleged to have been

murdered, defendant's counsel objected that they were not admissible, being hearsay. Such declarations and statements are, in a criminal cause, admissible only in exceptional cases and under special circumstances and conditions. The objection having been *prima facie* well grounded, it should have been sustained, unless the facts and circumstances were such as to have made them admissible under the special facts and circumstances referred to. They were not offered in this case as dying declarations, but as being part of the *res gestae.* The court admitted them as being so without any statement as to what the facts and circumstances were which made them such. We cannot accept the judge's conclusions on this subject without recital of any facts in support of the same.

As matters appear on the face of the bill of exceptions, the objection should have been sustained.

It appears from Noble's testimony that he had not seen Hebert from ten o'clock at night—the time at which he left the house they were both occupying—until he returned to the house badly wounded between two and four o'clock in the morning. Noble knew nothing himeslf of what had occurred in the meantime. Hebert, out of the presence of any one, gave to Noble a narrative statement of what had occurred. In the course of it he stated that the man who shot him had jumped on the freight train which was just pulling out; that he, Hebert, had been standing on the narrow space between the main track and the switch when the freight train pulled in; that as it slowed up a convict jumped from between two of the cars; that it was this convict who had shot him at that time and place and that the convict after shooting him had *jumped on the freight train which was just pulling out.*

Noble testified to the fact that just after Hebert came in wounded and waked him, he distinctly heard the noise of rumbling of a train which had just pulled out from the station and going east. This testimony of Noble was a link in the direction of establishing the fact that the statements of Hebert were part of the *res gestae,* but *per se* it did not establish the fact. Noble showed the time the statements were made with reference to the pulling out of the train, but the time at which Hebert was shot, with reference to that same fact, remained still to be ascertained in order to furnish the data upon which was to be tested the *admissibility* of the statements as *res gestae.* Had testimony been adduced on that subject, these two facts combined might

have laid the foundation for the introduction in evidence of the declarations. We would then have known whether they and the act with reference to which they were made, bore such relations to each other as to cause the former to fall under the operation of the rule governing the admissibility of unsworn statements as part of the *res gestae*. Proof that Hebert's declarations were made simultaneously, or almost so, with the departure of the freight train would still leave open for ascertainment the time those statements were made, with reference to that at which he was shot. The facts by and from which the admissibility of the statements as *res gestae* are to be tested, have to be "testified" to by persons cognizant of them. The admissibility itself of the statements being the very question at issue for decision, no part of them are to be used for the purpose of determining it. Counsel very correctly say: "There being no foundation for the admission of the declaration, it was used as its own foundation and was itself the basis on which it was admitted."

The statements should not have been admitted in evidence under the circumstances in which it was offered.

For the reasons assigned, it is ordered, adjudged and decreed that the verdict of the jury and the judgment of the court thereon, herein appealed from, be, and the same are hereby set aside, avoided, annulled and reversed, and the cause is reinstated and remanded for further proceedings according to law.